## Mitchell et al. v. Perkins et al.

March 22, 1949.

J. J. Tye and Victor A. Jordan for appellants.

Hiram H. Owens for appellees.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

The most appropriate thing about this litigation is that the property in controversy is located on Fighting Creek in Knox County. The parties to this litigation or their predecessors in title have been ''feudin and fightin''..over this land, or the larger tract of which it is claimed to be a part, intermittently since 1899. The property immediately involved in this controversy is a narrow strip of ground lying between the home of appellees and the concrete highway between Barbourville and Pineville, known as U. S. Highway No. 25 E. This strip, some 25 to 30 feet in width, is about 175 feet long and in the brief of the appellees it is stated that the land involved contains less than one tenth of an acre, is low and swampy and is worth about $5.00. Appellants' brief says it contains about one acre. In his opinion filed in the record, the judge, who viewed the property, also describes the property as low and swampy, but says nothing of its value. From the pictures filed as exhibits it is apparent that the property has little intrinsic value. Certainly its value must be but a fraction of the cost of this litigation in which a large three volume record has been built up and brought to this court. We are constantly amazed at the extensive and expensive litiga-

tion which comes to this court from our mountain section involving small tracts or strips of land that often appear not to be worth the cost and effort involved. The only feasible explanation seems to be the high percentage of Anglo-Saxon blood still coursing through the veins of our mountain people and that inherent love of the soil, as represented by a piece of real estate, which characterized the old Anglo-Saxon race.

According to appellants' theory of the case the situation here involved arose out of the change in the location of the road when the new highway 25 E was built over twenty-five years ago. The principal part of appellant's property, consisting of over 400 acres, lies south of the new highway and if the strip here involved was ever part of their property, it was severed from the remainder of the tract by the location of the new road and now has no physical connection with the remainder of their land. Appellees' property lies wholly on the north side of the new highway. The strip in controversy is contiguous to appellees' property and in fact lies between their residence and the new highway 25 E. It is apparent, therefore, that the property in dispute has a greater intrinsic and perhaps even psychological value to appellees, lying as it does between their home and the highway, than it could have to appellants, cut off as it is and lying across a much traveled road from the rest of their land. However, this has no bearing on the merits of the case if we can find the merits from the extensive, conflicting proof and the conflicting and irreconcilable plats and surveys shown in the record.

Although there had been some previous criminal prosecution of appellee S. M. Perkins by appellants for trespass involving this property, the present litigation started when appellants brought this suit against appellees. In the petition it was alleged that appellees had wrongfully entered upon the tract of land, described in the petition, and were about to build a fence to enclose and convert same to their own use and to deprive appellants of its use, thereby casting a cloud on their title to said property. They asked an injunction restraining appellees from trespassing on said property and building said fence and for damages in the sum of $200.00. The clerk issued a temporary restraining order. By answer and

counterclaim appellees denied the allegations of the petition, pleaded title to said property by adverse possession, claimed the suit was induced by malice and to harass appellees and asked $5000.00 damages on their counterclaim. A reply made up the issues.

After the taking of extensive evidence in which more than thirty witnesses testified, some more than once, the case was submitted and the court, after viewing the property with the parties and their attorneys, wrote a short opinion from which we quote the following:

"In 1899, there was a judgment in the Knox Circuit Court between predecessors in title that fixes an agreed beginning point—the sycamore—that both parties agree is important to fix the beginning point here. The original call was 'beginning on a point S 55 E 26¼ poles to a sycamore on the south side of the road, continued in all 40 poles to a stake at forks of road.'

"The plaintiffs claim the proper way to locate this call is S 55 E 26¼ poles to the sycamore, then break the course and take it S 64½ 13¾ poles with the old road, to a stake, thence S 86½ 32 poles to the Rasnick Road, Cole survey and map.

"The defendants claim that the call of S 55 E 26¼ poles to the sycamore should be continued from the sycamore 13¾ poles—a straight line—to the stake at forks of road; thence S 88 32 poles to the Rasnick Road, Williamson Survey and map.

"Some photographs, exhibits 2 and 5, are filed in the record that show the sycamore tree. They also show the area coming down the hill most of the way covering the 13¾ poles toward the road. The plaintiffs claim the old road is inside the fence shown in the photos, and the defendants claim the old road is outside the fence and along the scalded area, shown to have no grass, with a gulley.

"The real question in controversy is to locate the old road. The evidence of the witnesses is conflicting. The court, with attorneys for the parties, viewed the property, and has come to the conclusion that the location, as shown by the defendants' photos and Williamson's survey is the correct location of the line.

"The temporary restraining order granted by the Clerk is dissolved, and prayer for permanent injunction is denied."

The present appeal is from the judgment based on the above opinion. After reading all the testimony in this case, as we have done, we must agree with the Chancellor that the evidence is conflicting. Even the two surveyors, Williamson and Cole representing the respective sides by which they were employed, although starting at the same well established beginning point, reached different conclusions. If the Williamson survey is correct, then the call and distance from the fixed sycamore point reaches to the north edge of the new highway, as it now exists, and runs east along that highway, and the property involved was never part of appellants' tract but was part of the tract which has been owned by appellees and their predecessors in title since 1899. On the contrary, if the Cole survey is correct, then the call and distance from the fixed sycamore reaches and runs along the old road which this survey locates some 20 to 30 feet north of the new road, and the property involved was never part of appellees' property but is part of appellants' tract which has been owned by them and their predecessors in title since 1874. Other proof as to the location of the old road is equally conflicting, some witnesses testifying that it was located substantially where the new road is now located and is now covered up by the new road. Others testify that it was located north of the present road and that the right of way for the new road came entirely from appellants' tract leaving a small part of appellants' tract north of the new road which constitutes the land in controversy.

After reading all this conflicting testimony, examining the various plats filed in the record and reading the able and extensive briefs of counsel, we are very much in doubt as to the contentions of the respective parties. When we entertain such a doubt, as we do here, it is our rule, as we have so often said, to uphold the decision of the Chancellor on this pure question of fact. Especially is this true where, as in this case, the Chancellor had viewed the premises with the parties and counsel and has had pointed out to him the complicated situation here involved. Under these circumstances we would not be

justified in reversing his finding unless it was against the clear preponderance of the evidence. Combs v. Combs, 307 Ky. 790, 212 S.W.2d 307. We do not think it was.

The judgment is therefore affirmed.